FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2021 SEP 15 AM 11: 50

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| W. R. Grace & Co, et al. | ) | Bankruptcy Case No. 01-01139 (AMC) |
| Debtor. | ) | BAP Case No. 21-00016 |
| ------------------------------- | ) | ____ |
| GARY SMOLKER | ) | |
| Appellant, | ) | |
| v. | ) | C.A. No. 21-460-LPS |
| W.R. GRACE & Co, et al | ) | Case No. 1:21-cv-00987-LPS |
| Appellee | ) | |
| _____ | ) | Related Document Nos. 2, 11, 13. 14 |

EMERGENCY REQUEST FOR RECUSAL OF HONORABLE LEONARD P. STARK, UNITED STATES DISTRICT COURT JUDGE, EMERGENCY REQUEST FOR ORDER THAT BREIFING BE DEFERRED UNTIL IT IS DECIDED WHETHER A NEW JUDGE WILL REPLACE JUDGE STARK IN CIVIL APPEAL CASE NUMBER 1:21-civ-00987-LPS and in CIVIL APPEAL CASE NUMBER 1-21-cv-00460 , AND EMERGENCY REQUEST FOR LEAVE OF COURT TO FILE REPLY IN SUPPORT OF OPPOSITION OF APPELLANT GARY SMOLKER TO RECOMMENDATION OF CHIEF U.S. MAGISTRATE JUDGE MARY PAT THYNGE DATED AUGUST 9TH, 2021 THAT THIS BANKRUPTCY APPEAL BE WITHDRAWN FROM MANDATORY MEDIATION

**NOTICE OF EMEGENCY MOTION**

A copy of this emergency motion was sent separately to Roger Higgins, James E. O'Neill, and Laura Davis Jones, each of the attorneys representing W.R. Grace &

1

Co.'s, via email and by US mail on September 13, 2021. See attached Proof of Service.

## EXECUTIVE SUMMARY

**I, Appellant Gary Smolker ("SMOLKER"), believe I cannot receive a fair impartial hearing in front of United States District Court Judge Leonard P. Stark.**

**Two matters are pending before Judge Stark in this Appeal Case: (1) Attached "Motion for Leave to File a Reply", and (2) "Motion to Dismiss" (Docket No. 4, filed on July 20, 2021).**

**SMOLKER is currently paying over $9,000 per month to stay in a hotel room and to keep his personal property in a rented condo. SMOLKER CANNOT CONTINUE TO DO THAT.**

**CURRENTLY, Appellant SMOLKER'S "Appellant Opening Brief" is due on September 21, 2021 in Appeal Case No. 1:21-cv-00460-LPS.**

**Due to circumstances beyond SMOLKER'S control – including limited commitments such as the personal financial and health emergency of finding a new place to live as soon as practical which SMOLKER cannot reasonably rearrange - SMOLKER is unable to file SMOLKER'S "Appellant's Opening Brief" in Appeal Case No. 1:21-cv-00460-LPS by the upcoming September 21, 2021 due date without impairing its quality.**

SMOLKER will - as soon as they can be prepared - file (1) a "Motion to Modify Briefing Schedule" in Appeal Case No. 1:21-cv-00460-LPS, and (2) and (3) "Motions to Disqualify" Judge Stark from Presiding in Appeal Case No. 1:21-cv-00460-LPS and from Presiding in Appeal Case No. 1:21-cv-00460-LPS.

## OVERVIEW

Appellant Gary Smolker ("SMOLKER") is now paying more than $9,000 a month for housing to stay in a 470 square foot hotel room at the Courtyard by Marriott in Woodland Hills, California ("MARRIOTT").

SMOLKER does not have space in his hotel room for even a small tiny fraction of SMOLKER'S personal belongings presently located in an

apartment he has been renting as his primary residence since June 1, 2015, located in Van Nuys, California.

SMOLKER cannot live a normal life in the hotel room where SMOLKER is now living.

Living in that hotel room is destroying SMOLKER'S health.

SMOLKER moved into MARRIOTT on May 14, 2021.

On or before May 14, 2021, SMOLKER'S peaceful occupancy and enjoyment of SMOLKER's HOME, a rented spacious luxurious condo located at 14242 Burbank Blvd, in Van Nuys, California, became destroyed by the actions of SMOLKER'S landlord.

It became unsafe, infeasible, and mentally intolerable for SMOLKER to remain living and staying in SMOLKER'S HOME on and before May 14, 2021 due to:

- constant break-ins to SMOLKER'S HOME by the landlord, constant break-ins to SMOLKER'S HOME by workmen working for the landlord, constant break-ins to SMOLKER'S HOME (the rented condo) by plumbers working for the landlord, constant break-ins to SMOLKER'S HOME by consultants working for the landlord, constant break-ins to SMOLKER'S HOME by officers of the Homeowners Association.
- SEVERAL thefts of SMOLKER'S personal property located in SMOLKER'S home took place after the landlord, et al. started breaking into SMOLKER'S HOME.
- The landlord threatened to tear up the entire living room flooring - wooden flooring covering the entire floor of the living room in SMOLKER'S HOME.
- The landlord threatened to rip out wood cabinets under a kitchen counter in the kitchen in SMOLKER'S HOME.
- Over SMOLKER'S loud and written protests the landlord and workmen working for the landlord carried out recklessly hazardous unsafe construction practices in SMOLKER'S HOME without SMOLKER'S consent.

- SMOLKER'S landlord and people working for SMOLKER'S landlord ignored SMOLKER'S detailed written instructions and demands specifying that construction activities in SMOLKER'S HOME must be performed per specific identified standard for doing remediation work in water damaged residential structures.
- SMOLKER'S landlord and people working for SMOLKER'S landlord repeatedly performed blatantly unsafe construction activities in SMOLKER'S home over SMOLKER's protests.
- The only one way in and out of SMOLKER'S HOME (rented condo in Van Nuys) is through the front door of SMOLKER'S HOME.
- The landlord changed the lock on the front door of SMOLKER'S HOME without SMOLKER'S permission in order for the landlord to gain access to SMOLKER'S HOME without SMOLKER'S permission after being told in writing and orally to stay out of SMOLKER'S HOME.
- SMOLKER'S landlord's activities and actions destroyed SMOLKER'S peaceful enjoyment of SMOLKER'S HOME.
- As a result of SMOLKER'S landlords activities and actions SMOLKER had no safety in his home from break-ins, from thefts being committed of SMOLKER'S personal property located in SMOLKER'S home, and from unsafe construction activities taking place while SMOLKER was living in SMOLKER'S HOME.
- After repeatedly demanding that the landlord cease and desist landlord's harmful illegal activities SMOLKER'S landlord demanded in writing that SMOLKER vacate and leave SMOLKER'S HOME; SMOLKER'S landlord demanded that SMOLKER leave the residential premises that SMOLKER had lived in for more than five years in a mere 30 days.
- The demand that SMOLKER vacate SMOLKER'S HOME in 30 days that SMOLKER'S landlord gave to SMOLKER is and was a demand that is and was illegal under both California state law and City of Los Angeles municipal law.

A few days after SMOLKER checked into the MARRIOTT, on May 20, 2021, SMOLKER had air samples were taken in SMOLKER'S HOME by a nationally recognized environmental consultant hired by SMOLKER.

**An analysis of those air samples determined that toxic mold Stachybotrys is present in the walk-in closet in the master-bedroom, in the master-bedroom, and in the master-bathroom in SMOLKER'S HOME.**

**After May 14, 2021, SMOLKER had more than 900 books in SMOLKER'S HOME, which were no longer instantaneously available to SMOLKER.**

**Up until May 14, 2021, while living in SMOLKER'S HOME, SMOLKER used those books on a regular basis in his law practice. SMOLKER used those books in writing posts on SMOLKER'S "Smolker Idea Exchange" Blog. SMOLKER used those books in writing posts on Instagram at garyspassion, and when writing replies and comments made by SMOLKER to other person's Instagram posts.**

**SMOLKER rented and took occupancy of the property in question (SMOLKER'S HOME) as SMOLKER'S primary residence on June 1, 2015.**

Smolker is about to file a "Motion to Change Briefing Schedule, etc." in Appeal Case No. 1-21-cv-00460-LPS.

One of the pleadings to be filed in support of SMOLKER'S "Motion to Change Briefing Schedule, etc." is a declaration of Lauren Elder dated June 30, 2021 which has attached to her declaration 113 photos taken by Ms. Elder of the interior of SMOLKER'S HOME with dimensions – taken by Ms. Elder - superimposed on those photos.

A copy of that declaration with photos with dimensions superimposed was served on each of GRACE'S attorneys [Attorneys Roger Higgins, Esq., James E. O'Neill, and Laura Davis Jones] on June 30, 2021.

**SMOLKER'S HOME consists of: [Exhibit Page Number]**

- **A large 224" X 239"master bedroom [89], with a 90" X 94" X 90" extra-large king sized bed with canopy top [90], chest of drawers with TV set on top [93, 94], night stands [91], a 20" X 20" X 27" swivel book stand in it, and various wall hangings, lamps, and lamp stands,**
- **there is a 90" X 53" balcony adjacent to the master bedroom accessible only though the master bedroom [39],**

5

- A large 108" X 122" master bathroom [2], with a large 58" X 31" X 76" bath tub, and a beautiful glass enclosed shower [2] next to the bath tub,
- The master bathroom has two sinks placed in a 80" X 23" counter top with cabinets under the counter-top [5, 6] and two mirrors above the sinks and cabinets [5],
- A second 120" X 83" normal size bath room,
- A very large walk-in-closet connected to the master bedroom, which takes up an entire 127" X 76" wall [106],
- A fully furnished and equipped 161" X 161" study [42] with large 77" X 31" [43] desk, a 55" X 13" hutch on top of the desk [57], a 29" X 36" swivel desk chair [61], 77" X 92" six floor to ceiling book cases [60], two filing cabinets – one 18" X 52" [62] the other 17" X 27.5" [64] with a 17" X 10" Dell printer on top of it [63] -. A 31" X 35" mobile piece of furniture with four storage cabinets [65], a stand-alone 16" X 13.5" addition on top of a book case [66] which is 15' X 77" tall [67], and a very large closet in front of which are two sets of 64" X 80" sliding glass mirrors [47] behind which is the very large 150" 29" X 98" closet [55],
- a hallway with a built in storage cabinet where SMOLKER stores office supplies and professional notebooks, and CDs,
- a fully equipped 155" X 106" kitchen [68, 69,] with a 36" X 155" [70, 84] counter with two sinks [83] separating the kitchen from the living room,
- a large living room with a playpen couch consisting of multiple parts and an 52"X 52"X17" ottoman [13, 14, 15, 16, 17, and 18],
- Also in living room: a 14" X 7" Brothers Printer on a 24" X 26" side table [21, 22],
- In the living there is also a 55' X 54" table with a lamp, a HP Color Printer and an iMac computer in living room [23, 25] with four 19" X 32" chairs to sit on around the table [24],
- There is a 15" X 79" bookcase and a 32" X 71" book case against one wall in living room,
- There is a 48" X 28" X 39" reading chair in the living room [34],
- Behind the reading chair is a sliding glass door which leads to an outside 87" X 73" balcony accessible only through the living room [40],
- On the balcony is a 56" X 23" X 53' bar-b-q [41],
- There is a 52" X 32" TV screen over a fire place in the living room [33]
- The fireplace is a 45" X 47" "fireplace" [19],
- a 57" X 89" entry way [8],

- There are private balconies next to the master bedroom, next to the study and next to the living room,
- Access to the private balcony next to the master bedroom is accessible only from the master bedroom,
- Access to the private balcony next to the study is accessible only through the study,
- Access to the private balcony adjacent to the living room is accessible only through the living room,
- There is a 27" X 72"room containing a washer and a dryer [11], and
- There is a 55" X 37" room where SMOLKER stores laundry and kitchen supplies [12].

**Per a written lease SMOLKER pays his landlord $3,320.26 per month as rent.**

**SMOLKER has continued to pay SMOLKER'S landlord $3,320.26 per month in May, June, July, August, and September 2021 for peaceful occupancy and quiet enjoyment of SMOLKER'S HOME ; albeit SMOLKER has been deprived of the quiet and peaceful enjoyment of SMOLKER'S HOME since May, 2021.**

**SMOLKER has been paying Courtyard by Marriott over $6,000 per month for staying at the MARRIOTT since May, 2021.**

**SMOLKER presently occupies a 470 square foot hotel room at the MARRIOTT.**

**It is bad for SMOLKER'S physical, mental and financial health for SMOLKER to continue to live at the MARRIOTT.**

**There is no kitchen in SMOLKER'S room at the MARRIOTT. SMOLKER has had to eat all meals out, at restaurants.**

**SMOLKER'S weight was 155 pounds when he was examined by Cardiologist Richard L. Taw, Jr., M.D. on June 4, 2020.**

SMOLKER's weight has shot up to over 170 pounds since then.

See Exhibit "9": SMOLKER'S weight August 27 through September 7, 2021.

SMOLKER'S blood pressure has shot up also. See Exhibit "8": SMOLKER blood pressure readings August 9 through August 12, 2021.

SMOLKER'S blood pressure shot up to 193/105 on August 9, 2021.

That was shortly after SMOLKER filed his opposition to GRACE'S Motion to dismiss this appeal.

On August 9, 2021 U.S. Chief Magistrate Judge Thynge made her recommendation which is the subject of the within Motion for Leave to File Reply in Support of SMOLKER'S OPPOSITION TO JUDGE THYNGE'S AUGUST 9, 2021 RECOMMENDATION.

Judge Thynge received an unethical and illegal ex parte communication from GRACE'S attorney Roger Higgins.

Judge Thynge not only ignored the illegality of Attorney Higgins' ex parte communication to Judge Thynge but advised SMOLKER that Higgins ex parte communication contained all the information she had to know in order to make her recommendation.

SMOLKER was given approximately one day to file an opposition to GRACE's "Motion to Dismiss."

Attorney Higgins supplied Judge Thynge with an incomplete 16 page copy of what was represented to be GRACE's Motion to Dismiss SMOLKER'S Appeal of this case.

GRACE's "Motion to Dismiss" in totality contains over 353pages and weights over three pounds.

On September 7, 2021, SMOLKER first learned that Judge Stark has written a very flattering (like a love letter) judicial profile of Judge Thynge which was published in May/June 2014.

It is very important to SMOLKER that Judge Stark not be prejudiced or biased against SMOLKER.

**SMOLKER cannot continue to pay over $9,000 per month for staying at the MARRIOTT and keeping SMOLKER'S personal library of over 900 books, and SMOLKER'S extensive personal belongings in SMOLKER'S HOME.**

(1) Appellee W.R. Grace & Co. ("GRACE"), (2) Honorable Ashely M. Chan, United States Bankruptcy Judge, (3) Honorable Mary Pat Thynge, Chief United States Magistrate Judge for the United States District Court for the District of Delaware, and (4) Honorable Leonard P. Stark, United States District Court Judge for the District of Delaware, and each of them, have each made it impossible for SMOLKER to find a new place to live.

Each of them have and made it impossible, impractical, and unfeasible for SMOLKER to escape the financial nightmare of being compelled to pay over $9,000 per month to have a place to live and place to keep SMOLKER'S personal belongings.

## ABBREVIAGTED BRIEF HISTORY OF EVENTS RELEVANT TO RECUSAL OF JUDGE STARK

Honorable Leonard P. Stark, United States District Court Judge for the District of Delaware is presiding over two appeals brought by Appellant Gary Smolker ("SMOLKER"): Appeal Case No. 1:21-cv-00987-LPS and Appeal Case No. 21-cv-00460-LPS.

In or about 2014, Judge Stark wrote a love letter type "Judicial Profile" describing Honorable Mary Pat Thynge, Chief United States Magistrate Judge, for the District of Delaware in the most flowery, flattering and loving way, which was published in May/June 2014 ("LOVE LETTER").

Judge Stark is supposed to decide whether to accept or reject the recommendation made by Chief United States Magistrate Judge Thynge regarding whether an appeal in Appeal Case No. 1:21-cv-00987-LPS should be in the District Court's mandatory mediation program.

Judge Thynge recommended that the appeal not be in the District Court's mandatory mediation program.

SMOLKER filed an objection to Judge Thynge's recommendation.

By way of this pleading, SMOLKER is now asking the Court (and asking Judge Stark if Judge Stark does not recuse himself from hearing motions in this appeal case and/or if SMOLKER'S request that Judge Stark be disqualified from making rulings in this appeal case is not granted) for leave of Court to file a REPLY in support of SMOLKER'S Objection to Judge Thynge's Recommendation.

SMOLKER believes that in light of Judge Stark's published love letter type "Profile of Magistrate Judge Thynge", Judge Stark cannot rule impartially on SMOLKER'S "Motion for Leave of Court to File a Reply in Support of SMOLKER'S Opposition to Magistrate Judge Thynge's Recommendation."

On June 7, 202, Judge Stark filed a "Briefing Schedule Order" ("ORDER") in Appeal Case No. 1:21-cv-00460 setting a deadline of September 21, 2021 for SMOLKER to file SMOLKER'S "Appellant's Opening Brief."

Judge Stark's ORDER also provides:

*"6. With respect to any further motions, whether on the topics Appellant has proposed (D.1 11) or otherwise, such motion shall comply with the requirements and deadlines set forth in Federal Rules of Bankruptcy Procedure 8013 and other applicable rules and **shall not otherwise delay the briefing schedule set forth herein.**"* **EMPHASIS ADDED**

SMOLKER is about to file a motion seeking an extension of time in which to file SMOLKER'S "Appellant's Opening Brief."

Item 6 of Judge Stark's ORDER (quoted above) is a prejudicial and biased prejudgment of SMOLKER'S "Motion to Extend Time to File Appellant's Opening Brief."

In light of Item 6 of Judge Stark's ORDER, SMOLKER believes SMOLKER cannot get a fair and impartial hearing of SMOLKER'S soon to be filed "Motion to Extend Time to File Appellant's Opening Brief" in Appeal Case No. 1:21-cv-00460-LPS.

All litigants, including SMOLKER, have a guaranteed right to ask for more time to file any legal document.

There are a host of statutes providing the Court with authority to extend time for filing documents including, but not limited to, Federal Rules of Civil Procedure

6(b); Federal Rules of Civil Procedure 15(a)(2); in the Appellate Courts, Federal Rule of Appellate Procedure 26(b); and, in the Bankruptcy Court, 11 United States Code Section 105 as well as Federal Rule of Bankruptcy Procedure 9006.

Each of these rules is grounded on due process standards.

In light of the above Black Letter Law, which guarantees SMOLKER the right to ask for an extension of time to file "Appellant's Opening Brief", SMOLKER believes SMOLKER cannot get a fair and impartial hearing of SMOLKER'S soon to be filed "Motion to Extend Time to File Appellant's Opening Brief" and that Judge Stark has is personally biased and prejudiced against SMOLKER and SMOLKER'S two appeal currently before Judge Stark.

The size of the Record on Appeal in Appeal Case No. 1:21-cv-00460-LPS must be considered.

There are some thirty-three (33) bankruptcy docket entries that relate to the record on appeal in Appeal Case Number 1:21-civ-00460. These documents total approximately 2500 pages. There are an additional 105 pages of transcripts as well.

Judge Stark had no knowledge of the size of the record on appeal when he set a September 21, 2021 deadline for SMOLKER to file SMOLKER'S Appellant's Opening Brief.

Reviewing these documents in preparation for drafting an opening brief is itself a significant task that requires considerable time.

Since Judge Stark issued his ORDER on June 7, 2021, SMOLKER has had to respond to the following actions taken by Judge Stark, by GRACE, by Judge Chan, and by Judge Thynge.

SMOLKER needed that time to look for a new place to live. Instead SMOLKER has spent his time:

- Complying with Judge Stark's June 7, 2021 order to file a Designation of Record on Appeal on or before July 7, 2021.
- Preparing a Motion to Extend Time to File Appellant's Opening Brief and to Modify Judge Stark's June 7, 2021 Briefing Schedule Order.

- Preparing a Motion for Permission to File an Ex Parte Motion for Sanctions against Grace Attorneys in Bankruptcy Court. Judge Chan's ruling on SMOLKER'S request is the subject of Appeal Case. No.1:21-cv-00987-LPS.
- Preparing an Opposition to GRACE attorneys' motion to cancel June 24, 2021 hearing date.   Judge Chan's ruling on that motion is the subject of Appeal Case No. 1:21-civ-00987-LPS.
- Preparing a Notice of Appeal of Judge Chan's June 22, 2021 rulings on SMOLKER's request for permission to file an ex parte sanction motion and GRACE's motion to cancel June 24, 2021 hearing.  That is first item in Appeal Case No. 1:21-cv-00987-LPS.
- Preparing a Designation of Record on Appeal in Appeal Case No. 1:21-cv-00987.
- Preparing a submission requested by Magistrate Judge Thynge in Appeal Case No. 1:21-cv-00987.
- Preparing an OPPOSITION to GRACE'S Motion to Dismiss Appeal Case No. 1:21-cv-00987.
- Preparing an OPPOSITION to Judge Thynge's August 9, 2021 Recommendation.
- Preparing the "Request for Leave to File Reply in Support of Opposition to Judge Thynge's Recommendation – which is part of this document.

**Judge Stark issued Judge Stark's June 7, 2021 "Briefing Schedule Order" without receipt of any input from SMOLKER.**

Judge Stark issued Judge Stark's June 7, 2021 "Briefing Schedule Order" after receiving several illegal ex parte communications from attorneys representing Appellee W.R. Grace & Co. (GRACE).

GRACE attorney Roger Higgins filed illegal ex parte communications with Judge Stark on June 1, 2021 and on June 4, 2021.

Judge Stark issued Judge Stark's June 7, 2021 "Briefing Schedule Order" without knowledge that substantially all of SMOLKER'S time after June 7, 2021 would be taken up (1) preparing a motion seeking an extension of time to file appellant's opening brief and other pleadings in Appeal Case No. 1:21-CV-00460 –LPS, (2) responding to actions taken by GRACE'S attorneys, (3) responding to actions taken by Honorable Ashely M. Chan, United States Bankruptcy Judge, and (4)

responding to actions taken by Honorable Mary Pat Thynge, Chief Magistrate Judge for the Delaware District of the United States District Court.

Judge Stark issued Judge Stark's June 7, 2021 "Briefing Schedule Order" without knowing that (1) SMOLKER would be paying more than $9,000 a month for housing while staying at the MARRIOTT, (2) SMOLKER would be cut off from ready access to more than 900 books in SMOLKER'S HOME and would be cut off from access to SMOLKER'S large iMac Computer and three printers in SMOLKER'S HOME while staying in the MARRIOTT.

When Judge Stark issued his June 7, 2021 "Briefing Schedule Order," Judge Stark did not know that staying at the MARRIOTT is bad for SMOLKER'S health; that SMOLKER has damaged lungs; that SMOLKER has high blood pressure; that SMOLKER is a "heart patient" and has three stents in his arteries.

When Judge Stark issued his June 7, 2021 "Briefing Schedule Order" Judge Stark was not aware of the facts that as a result of GRACE's bad faith litigation behavior SMOLKER have not been able to see doctors, do necessary exercises, or eat or sleep properly.

Judge Stark issued his June 7, 2021 "Briefing Schedule Order" without any input from SMOLKER after receiving unethical ex parte communications from GRACE attorney Higgins, and a Motion for Briefing Schedule which clearly unequivocally misrepresented critical facts that SMOLKER did not have an opportunity to repond to.

**SMOLKER IS ABOUT TO FILE A MOTION TO DISQUALIFY JUDGE STARK FROM BEING THE JUDGE IN CIVIL APPEAL CASE NO. 1:21-00987-LPS AND APPEAL CASE NO. 1:21-cv-00460-LPS under the authority 28 United States Code Section 455 and recognized rules of proper judicial conduct.**

In his motion SMOLKER will state under penalty of perjury that SMOLKER believes Judge Stark is prejudiced against SMOLKER and the interest of SMOLKER in Civil Appeal Case No. 1:21-00987-LPS and is prejudiced against SMOLKER and the interest of SMOLKER in Civil Appeal Case No. 1:21-cv-00460 and that SMOLKER believes SMOLKER cannot have a fair and impartial hearing before Judge Stark.

SMOLKER did not learn of the existence of the Judicial Profile of U.S. Magistrate Judge Thynge written by Honorable Leonard P. Stark, District Court Judge until September 7, 2021.

**REQUEST FOR LEAVE TO FILE REPLY IN SUPPORT OF OBJECTION OF SMOLKER TO RECOMMENDATION OF JUDGE THYNGE DATED AUGUST 9, 2021.**

I received NOTICE from John D. Cerino, Clerk of Court that this case shall be referred to a United States Magistrate Judge to determine the appropriateness of mediation. Briefing will be deferred. See Document 2 filed 07/02/21 in Case 1:21-cv-00987-LPS.

I then received an ORDER issued by Chief Magistrate Judge Thynge that the parties shall advise Judge Thynge in a **joint written submission**, no longer than three (3) pages in 12 point font of their respective positions regarding mediation and reasoning for their positions on or before 7/29/21 by 4:00 p.m. See Docket Number 3 entered and filed on 7/8/2021.

Judge Thynge's order also states: *"Should the parties jointly request the matter be removed from the mandatory mediation requirement they are to provide a proposed briefing schedule and/or advise whether they feel a teleconference with a Magistrate Judge would be of assistance and why."*

On July 22, 2021, Daniel Taylor, Judicial Law Clerk to Chief Magistrate Judge Mary Pat Thynge, U.S., District Court for District of Delaware sent me an e-mail which states:

*"The submission from Mr. Higgins (attached) is sufficient for the court to make its recommendation. If you wish to supplement, please coordinate with counsel and provide a single, joint submission by 7/29/2021.*

*"The e-mail addresses for counsel of record are found on the attached sheet.*

*"Her Honor's e-mail address is judge_mary_pat;Thynge@ded.iuscourts.gov"*

The attached submission was a 16 page document titled "Motion for Entry of Order Dismissing Gary S. Smolker's Appeal of Bankruptcy Court Order Canceling Hearing." ("MOTION")

Above the first page of the document is a header which states "Case 1:21-cv-00987-LPS Document 4 Filed 07/20/21 Page 1 of 16.

GRACE'S MOTION includes an Appendix which contains 353 pages of pleadings and weighs in excess of three (3) pounds.

GRACE did not submit a copy of the 353 pages of pleadings which are part of GRACE'S "Motion to Dismiss" to Judge Thynge.

Judicial Law Clerk Taylor's July 21, 2021 email was the first **proof** I obtained of the uncontestable facts that:
- (1) W.R. Grace & Co.'s ("GRACE") had carried on an ex-parte communication with Judge Thynge, and
- (2) Judge Thynge did nothing in response to such illegal ex parte communication with Judge Thynge from GRACE's counsel.
- (3) It is acceptable to Judge Thynge that GRACE'S counsel directly disobeys and directly disobeyed Judge Thynge's ORDER to jointly submit a document no longer than three (3) pages in 12 point font.
- (4) Judge Thynge would make a judicial decision on whether or not to keep this appeal case in the District's mandatory mediation program without having all the facts pertinent to Judge Thynge's decision.
- (5) Judge Thynge would make her decision without making an effort to obtain relevant facts.

A logical inference from the above evidence is that:
- Judge Thynge does not do her homework.
- Judge Thynge does not learn the case as well as (if not better) than any of the lawyers.
- Judge Thynge is not committed to being prepared.

Those inferences provide a description of Judge Thynge completely opposite from the description of Judge Thynge provided in Judge Stark's judicial profile of Judge Thynge.

Judge Thynge's recommendation that Appeal Case No. 1:21-cv-00987-LPS be removed from the District's mandatory mediation program facilitates GRACE'S attempt to undermine SMOLKER'S ability to prosecute the two appeal cases (Appeal Case No. 1:21-civ-00460-LPS and Appeal Case No. 1:21-civ-00987-LPS)

currently before the Honorable Leonard P. Stark, United States District Court Judge for the District of Delaware.

On July 2, 2021 the Clerk of the Court notified the parties that, *"In accordance with the Standing Order of the Court dated September 11, 2012, this case shall be referred to a United States Magistrate Judge to determine the appropriateness of mediation."*

The Standing Order of the Court dated September 11, 2012, provides that a Magistrate Judge will decide if it would be appropriate to keep an appeal in mediation.

The "Standing Order for Objections filed under Fed. R. Civ. P. 72 dated the 9th day of October 2013 provides that "...*the party represented by counsel must provide the District Judge to whom the case is assigned, a courtesy copy of **all** filings (e.g. motions, briefs, appendices) associated with the matter to which the R&R, ruling or order relates. Such courtesy copies shall be provided to the District Judge no later than five (5) days after the objections are filed."*

That standing order also provides. *"Briefing on objections consists solely of the objections and an answer thereto. No reply in support of objections may be filed without leave of the Court. Unless otherwise orders, objections and answers thereto are limited to ten (10) double-spaced pages, and any application for modification of these limits shall be reviewed by the Magistrate Judge."*

Rule 72 (a) of the Federal Rules of Civil Procedure provides that the Magistrate Judge must promptly conduct the required proceedings.

Chief Magistrate Judge Thynge did not conduct the required proceedings.

- Judge Thynge did not conduct mediation.
- Judge Thynge did not endeavor to find out what the facts and what the issues are in Appeal Case No. 1:21-cv-00987-LPS.
- The procedure Judge Thynge engaged in while determining if the appeal should be in the mandatory mediation program nullified Appellant Gary Smolker's ("SMOLKER'S") constitutional rights.

Judge Thynge's review was not so much a review as a raw exercise of judicial power.

In Judge Thynge's review, Judge Thynge acquiesced to the unethical behavior of the attorneys representing Appellee W.R. Grace & Co. ("GRACE").

Judge Thynge's "Recommendation" compelled SMOLKER to file an "Objection."

SMOLKER'S "Objection" prompted GRACE to file an "Answer."

GRACE'S "Answer" compelled SMOLKER to file this Request of Court for Leave to file a Reply."

Time spent by SMOLKER so far with respect to a potential mediation in Appeal Case No. 1:21-cu-00987-LPS has been time NOT spent by SMOLKER preparing Appellant's Opening Brief in Appeal Case No. 1:21-cv-21-460-LPS and has been time SMOLKER was unable to spend looking for a new place to live.

Judge Thynge and GRACE have deprived SMOLKER of time and ability to prosecute SMOLKER'S claims against GRACE.

They have deprived SMOLKER of time needed to prepare a well prepared Appellant's Opening Brief in Appeal Case No. 1:21-cv-00460-LPS.

Litigants and the public at large have the right to expect judicial officers (1) to know the facts in the matters to be decided by them, (2) to exercise their best efforts to conduct the proceedings before them fairly, and (3) to discipline attorneys who knowingly act unethically.

In real life decision making relevant information is essential, and the quality of information is important.

Judge Thynge knowing made her decision – recommendation to withdraw appeal from mediation - with full knowledge that she was making her decision/recommendation without reviewing available relevant information.

The attached REPLY IN SUPPORT OF OPPOSITION OF APPELLANT GARY SMOLKER TO RECOMMENDATION OF CHIEF U.S. MAGISTRATE JUDGE MARY PAT THYNGE DATED AUGUST 9TH, 2021 THAT THIS BANKRUPTCY APPEAL BE WITHDRAWN FROM MANDATORY MEDIATION puts the following issues clearly and concisely before any judge, who hears this motion:

- Was it ethical for GRACE to send written ex parte communications to Chief United States Magistrate Judge Thynge?
- Was Judge Thynge under a duty to do something when Judge Thynge received a written ex parte communication from GRACE'S attorneys?
- Was Judge Thynge under a duty to do something when GRACE willfully disobeyed Judge Thynge's ORDER to submit a joint written statement to Judge Thynge?
- Was/is Judge Thynge under a duty to mediate or to recommend that Appeal Case No. 1:21-cv-00987 be mediated?
- Does/did SMOLKER have a constitutionally guaranteed right to have a fair hearing conducted by Judge Thynge??
- Should Appeal Case No. 1:21-cv-00987-LPS be mediated?

The twin issues of unethical conduct of W.R. Grace & Co. attorneys and of Appellant Gary Smolker's constitutionally guaranteed right to have a fair hearing permeate both appeals (Appeal Case No. 1:21-cv-21-00987- LPS and Appeal Case No. 1:21-civ-21-00460-LPS) presently before United States District Court Judge Leonard P. Stark.

A Mediator would help the parties come to agreement on how to proceed, narrow the issues on appeal, facilitate an orderly supplementation of the records on appeal in Appeal Case No. 1:21-cv-00987-LPS and Appeal Case No. 1:21-cv-00460-LPS, help the parties agree to a reasonable briefing schedule, and contribute to the efficient and effective processing of this appeal.

It is respectfully submitted that the need to deal decisively with complex, novel and important issues related to Appeal Case No. 1:21-cv-00987-LPS constitutes good cause for this Court to allow Appellant Gary Smolker to file the attached REPLY.

Dated: September 13, 2021   Respectfully submitted,

/s/ Gary Smolker
_____
Gary Smolker, Appellant, In Pro Per
Email: GSmolker@aol.com
Cell Phone: 310-749-9735
Office Phone: 818-788-7290
16055 Ventura Blvd., Suite 525
Encino, CA. 91436

Align top of FedEx Express® shipping label here.

ORIGIN ID:VNYA (818) 788-7290
GARY SMOLKER
SMOLKER LAW FIRM
16055 VENTURA BLVD STE 525

ENCINO, CA 91436
UNITED STATES US

SHIP DATE: 14SEP21
ACTWGT: 0.85 LB
CAD: 6992820/SSF02202

BILL THIRD PARTY

TO OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE
844 N KING STREET
WILMINGTON DE 19801

(111) 111-1111 REF:
INV:
PO: DEPT:

FedEx Express

E

WED - 15 SEP 4:30P
STANDARD OVERNIGHT

TRK# 0201 2836 4675 9365

XB ZWIA

19801
DE-US PHL

RT 745 6
FZ 749 16:30 D
9365
09.15


